**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| Jacqueline Clay, individually and on behalf of all others similarly situated, | |
| *Plaintiff*, | Case No. 1:21-cv-11133 |
| vs. | JURY TRIAL DEMANDED |
| The Procter & Gamble Company, | |
| *Defendant* | |

**<u>Class Action Complaint</u>**

i

## **Table of Contents**

I.     Introduction............................................................................................................. 1

II.    Parties..................................................................................................................... 1

III.   Jurisdiction and Venue........................................................................................... 1

IV.    Facts....................................................................................................................... 2

      A.     Defendant makes, markets, and sells DayQuil products prominently
            labeled "Non-Drowsy."........................................................................... 2

      B.     The Non-Drowsy DayQuil Products cause drowsiness. .......................... 5

      C.     Defendant's Non-Drowsy representations are misleading to reasonable
            consumers. ............................................................................................... 6

      D.     Plaintiff was misled by Defendant's misrepresentations ........................ 9

      E.     Class Action Allegations.......................................................................... 9

V.     Claims.................................................................................................................. 12

VI.    Jury Demand......................................................................................................... 18

VII.   Prayer for Relief................................................................................................... 18

## I.    Introduction.

1.    Defendant makes, sells, and markets "DayQuil" over-the-counter cough medicine. Most (or all) DayQuil products contain the active ingredient Dextromethorphan Hydrobromide ("DXM").  These products state on the front of their label that they are "Non-Drowsy." [1]

2.    By prominently labeling these products as "Non-Drowsy," Defendant led Plaintiff and other reasonable consumers to believe that the Non-Drowsy DayQuil Products do not cause drowsiness, and that drowsiness is not a side effect of those products.  But the truth is that products containing DXM—and thus the Non-Drowsy DayQuil Products—do cause drowsiness, and that drowsiness is a common side effect of DXM.

3.    In this way, Defendant misled Plaintiff and other reasonable consumers about the effects of the Non-Drowsy DayQuil Products.

4.    Defendant's misrepresentations allowed it to overcharge Plaintiff and other consumers for the Non-Drowsy DayQuil Products.

## II.    Parties.

5.    Plaintiff Jacqueline Clay is a citizen of New York (domiciled in New York, New York).  The proposed class (identified below) includes citizens of every state.

6.    Defendant The Procter & Gamble Company is a citizen of Ohio.  It is an Ohio corporation with its principal place of business at Procter & Gamble Plaza, Cincinnati, Ohio 45202.

## III.    Jurisdiction and Venue.

7.    This Court has subject matter jurisdiction under 28 U.S.C. § 1332(d)(2).  The amount in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs,

---

[1] Throughout this Complaint, DayQuil products containing DXM that state on their label that they are "Non-Drowsy" are called "Non-Drowsy DayQuil Products."

and the matter is a class action in which one or more members of the proposed class are citizens of a state different from the Defendant.

8.    The Court has personal jurisdiction over Defendant because it sold the Non-Drowsy DayQuil Products to consumers in New York, including Plaintiff.  Procter & Gamble has been doing business in New York during all relevant times.  Directly and through its agents, Procter & Gamble has substantial contacts with, and receives substantial benefits and income from New York.

9.    Venue is proper under 28 U.S.C. § 1391(b)(1) and 28 U.S.C. § 1391(d) because Defendant would be subject to personal jurisdiction in this District if this District were a separate state, given that Defendant sold the Non-Drowsy DayQuil Products to consumers in this District, including Plaintiff.  Venue is also proper under 28 U.S.C. § 1391(b)(2) because a substantial part of Defendant's conduct giving rise to the claims occurred in this District, including Defendant's sale to Plaintiff.

IV.    **Facts.**

A.    **Defendant makes, markets, and sells DayQuil products prominently labeled "Non-Drowsy."**

10.    Procter & Gamble makes, markets and sells the Non-Drowsy DayQuil Products

11.    The front label of each Non-Drowsy DayQuil Product prominently states that the product is "Non-Drowsy."  For example:

2

**DayQuil and NyQuil two-packs:**



*Red annotations added*

**DayQuil Cold & Flu bottles:**



*Red annotations added*

12.     These representations are materially the same across Non-Drowsy DayQuil Products.

13.     The Non-Drowsy DayQuil Products do not disclose anywhere on their packaging that they do or can cause drowsiness, or that drowsiness is a side effect.

14.     Based on the prominent "Non-Drowsy" label included on the face of each product, a reasonable consumer would believe that the products do not cause drowsiness.  That is, a reasonable consumer would believe that drowsiness is not a side-effect of the product.

15.     Defendant labeled the products this way because it intended consumers to rely on the labels and to believe that the products would not cause drowsiness, so that consumers would buy more products or pay more for them.

**B.     The Non-Drowsy DayQuil Products cause drowsiness.**

16.     In truth, products containing DXM—like the Non-Drowsy DayQuil Products—do cause drowsiness, and drowsiness is a documented side effect of DXM. [2]

17.     In fact, drowsiness is a common side effect at the recommended dosages.  For example, one study found that "[s]omnolence is a common side effect of centrally acting antitussive drugs" like dextromethorphan, and that 10.4% of users of products containing dextromethorphan develop drowsiness within three days of starting treatment with DXM cough medicine. [3,4]  The "cases of intense somnolence" were "related only to dextromethorphan" and not to the other drug studied.  And patients in this clinical study were given an even smaller

---

[2] Dextromethorphan: MedlinePlus Drug Information, NIH National Library of Medicine, https://medlineplus.gov/druginfo/meds/a682492.html (listing drowsiness as a side effect)
[3] E. Catena and L. Daffonchio, "Efficacy and Tolerability of Levodropropizine in Adult Patients with Non-productive Cough, Comparison with Dextromethorphan," 10 Pulmonary Pharmacology & Therapeutics 89-96 (1997).
[4] The study reports this side effect as "somnolence."  Somnolence means "the quality or state of being drowsy."  Merriam Webster Dictionary, https://www.merriam-webster.com/dictionary/somnolence

5

dosage of DXM (15 mg three times a day) than the recommended dose found in many DayQuil products. [5]

18.     The FDA's adverse event report database confirms that "sedation" is one of the most frequently-cited side-effects of dextromethorphan-containing products. [6]

19.     For this reason, the Federal Aviation Administration prohibits pilots from flying after ingesting Dayquil because it "contains dextromethorphan": [7]

| | Cough/cold products | Coricidin (allowed if no chlorpheniramine)<br><br>guaifenesin (found in Mucinex and Robitussin)<br>Mucinex fast-max severe congestion and cough (liquid)<br><br>Identify combo vs isolated | dextromethorphan (Delsym)<br><br>Dayquil (contains dextromethorphan)<br><br>Most "night-time" or "PM" medications contain a sedating antihistamine:<br>- Coricidin HBP cough & cold (contains chlorpheniramine)<br>- Nyquil (contains doxylamine) | Most cough medications are safe for flight, but caution for combination products with sedating antihistamines. **If the label states PM (for nighttime use) or DM (containing dextromethorphan), you should not fly for at least 5 half-lives** after the last dose (see above). |
| --- | --- | --- | --- | --- |
| **Cough** | | | | |

**C.     Defendant's Non-Drowsy representations are misleading to reasonable consumers.**

20.     The Food and Drug Administration prohibits drug labeling that is "false or misleading."  21 C.F.R. § 201.6.   It is misleading to label a product "Non-Drowsy" when it does cause drowsiness, or if drowsiness is a known side effect of one of its active ingredients.

21.     Based on the fact that Defendant labeled the Non-Drowsy DayQuil Products as "Non-Drowsy," a reasonable consumer would expect that those products do not cause drowsiness.  Similarly, a reasonable consumer would expect that drowsiness is not a side effect

---

[5] For example: DayQuil Cold & Flu Relief Liquid contains 20mg of DXM per 30ml of liquid cough syrup and the recommended dosage for adults and children 12 and over is 30ml every 4 hours.
[6] Sedation is associated with drowsiness. *See* IV/Monitored Sedation, American Society of Anesthesiologists, https://www.asahq.org/madeforthismoment/anesthesia-101/types-of-anesthesia/ivmonitored-sedation/ (even "minimal" sedation means that "you'll feel drowsy")
[7] https://www.faa.gov/licenses_certificates/medical_certification/media/OTCMedicationsforPilots.pdf

of the products (much less a common side effect).  Indeed, according to Consumer Reports, "'Non-drowsy' is code for antihistamines and other medications that don't make you sleepy." [8] This is the plain meaning of "non-drowsy," which means "not causing or accompanied by drowsiness." [9]

22.     DayQuil's advertisements and labeling do not contain any language that a reasonable consumer would understand to qualify these representations, or that would otherwise put a reasonable consumer on notice of the fact that the Non-Drowsy DayQuil Products actually cause drowsiness.

23.     Unlike Defendant, some other drug makers do not falsely claim that DXM-products are non-drowsy.  For example, DXM is an active ingredient in Mucinex DM, sold by Reckitt.  But the Mucinex label does not claim that Mucinex DM is non-drowsy, because this is not the truth.



---

[8] How to read over the counter (OTC) drug labels, Consumer Reports, https://www.consumerreports.org/cro/2014/04/how-to-read-over-the-counter-drug-labels/index.htm
[9] https://www.merriam-webster.com/medical/nondrowsy

24.     So Defendant could have simply omitted the false and misleading statement, "Non-Drowsy," from its products.

25.     Or, if Defendant wanted to say something to indicate that a Non-Drowsy Dayquil Product might cause *less* drowsiness than another product (e.g., NyQuil), they could have made a truthful statement to this effect, as other drug makers do.

26.     For example, Dramamine contains an active ingredient that causes drowsiness, Dimenhydrinate.  Dramamine also sells a "less drowsy" version that contains a different active ingredient, Meclizine, which causes less drowsiness.  The front label of Dramamine Less Drowsy prominently displays that it is "less drowsy":



27.     Whether or not an over-the-counter drug causes drowsiness is material to a reasonable customer.  In certain situations, consumers prefer over-the-counter drugs that will not make them drowsy to products that may make them drowsy.  For example, all else equal, a reasonable consumer would prefer to take a drug that does not cause drowsiness to one that does cause drowsiness during the day (or any periods of time when they plan to be awake).  As a

second example, if a consumer is planning to engage in activities that require them to be alert (like work), or during which they would prefer to be alert, that consumer would prefer to take a drug that does not cause drowsiness to one that does.  Indeed, in many situations, taking a drug that does or can cause drowsiness can be dangerous.  For example, taking a drug that causes drowsiness while driving is dangerous.

      **D.**    **Plaintiff was misled by Defendant's misrepresentations**

28.     In late 2021, Plaintiff bought a Non-Drowsy DayQuil Product (DayQuil Severe Cold & Flu) in New York, New York.  The package said "Non-Drowsy" prominently on the label, and Plaintiff read and relied on this statement when purchasing the product, because she wanted a product that she could take without becoming drowsy.  But when Plaintiff took the DayQuil medication, she became unexpectedly drowsy.  She would not have bought the DayQuil product for this intended use, had she known that the product did, in fact, cause drowsiness, and that drowsiness was a known side-effect of the product.

29.     Plaintiff would purchase Non-Drowsy DayQuil Products again if they were actually "Non-Drowsy" (i.e., if the product was sold as advertised).  Plaintiff, however, faces an imminent threat of harm because she will not be able to rely on the labels in the future, and thus will not be able to purchase the products.

      **E.**    **Class Action Allegations.**

30.     Plaintiff brings certain claims on behalf of the proposed class of: all persons who purchased a Non-Drowsy DayQuil Product in the United States during the applicable statute of limitations (the "**Nationwide Class**").

31.     For other claims, Plaintiff brings those claims on behalf of a subclass of consumers who live in the identified states (the "**Consumer Protection Subclass**").

32.     For certain claims, Plaintiff brings those claims on behalf of a subclass of consumers who, like Plaintiff, purchased Non-Drowsy DayQuil Products in New York (the "**New York Subclass**").

33.     The following people are excluded from the Class and the Subclasses: (1) any Judge or Magistrate Judge presiding over this action and the members of their family; (2) Defendant, Defendant's subsidiaries, parents, successors, predecessors, and any entity in which the Defendant or its parents have a controlling interest and their current employees, officers and directors; (3) persons who properly execute and file a timely request for exclusion from the Class; (4) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (5) Plaintiff's counsel and Defendant's counsel, and their experts and consultants; and (6) the legal representatives, successors, and assigns of any such excluded persons.

*Numerosity*

34.     The proposed class contains members so numerous that separate joinder of each member of the class is impractical.  Based on the pervasive distribution of Non-Drowsy DayQuil Products, there are millions of proposed class members.

*Commonality*

35.     There are questions of law and fact common to the proposed class.  Common questions of law and fact include, without limitation:

- Whether the Non-Drowsy DayQuil Products cause drowsiness;

- Whether Defendant's labeling of the Non-Drowsy DayQuil Products as "Non-Drowsy" is deceptive and misleading;

- Whether Defendant violated state consumer protection statutes;

- Whether Defendant committed a breach of express warranty; and,

- Damages needed to reasonably compensate Plaintiff and the proposed class.

***Typicality***

36.     Plaintiff's claims are typical of the proposed class.  Like the proposed class, Plaintiff purchased Non-Drowsy DayQuil Products.

***Predominance and Superiority***

37.     The prosecution of separate actions by individual members of the proposed class would create a risk of inconsistent or varying adjudication with respect to individual members, which would establish incompatible standards for the parties opposing the class.  For example, individual adjudication would create a risk that breach of the same express warranty is found for some  proposed class members, but not others.

38.     Common questions of law and fact predominate over any questions affecting only individual members of the proposed class.  These common legal and factual questions arise from central issues which do not vary from class member to class member, and which may be determined without reference to the individual circumstances of any particular class member. For example, a core liability question is common: whether Defendant's "Non-Drowsy" labeling is false and misleading.

39.     A class action is superior to all other available methods for the fair and efficient adjudication of this litigation because individual litigation of each claim is impractical.  It would be unduly burdensome to have individual litigation of millions of individual claims in separate lawsuits, every one of which would present the issues presented in this lawsuit.

**V.      Claims.**

**Count I: Violations of State Consumer Protection Acts**
**(on behalf of Plaintiff and the Consumer Protection Subclass)**

40.     Plaintiff incorporates by reference each and every factual allegation set forth

above.

41.     This count is brought on behalf of Plaintiff and the Consumer Protection Subclass

for violations of the following state consumer protection statutes:

| State | Statute |
|---|---|
| New York | N.Y. Gen. Bus. Law § 349, and the following. |
| Washington, D.C. | D.C. Code § 28-3901, and the following. |
| Massachusetts | Mass. Gen Laws Ann. Ch. 93A, and the following. |
| Missouri | Mo. Rev. Stat. § 407, and the following. |
| Rhode Island | R.I. Gen. Laws § 6-13.1- 5.2(B), and the following. |
| Vermont | 9 V.S.A. § 2451, and the following. |
| Washington | Wash. Rev. Code § 19.86.010, and the following. |

42.     Each of these statutes is materially similar.  Each broadly prohibits deceptive

conduct in connection with the sale of goods to consumers.  No state requires reliance, knowledge

or intent.  Instead, it is sufficient that the deceptive conduct is misleading to reasonable consumers

and that the conduct proximately caused harm.  *See Allen v. ConAgra Foods, Inc*., 331 F.R.D.

641, 666 (N.D. Cal. 2019) (finding that these states can be grouped into a certifiable subclass).

43.     Defendant's conduct, including the false labeling of the Non-Drowsy DayQuil

Products and sale of those products to Plaintiff and class members, violates each statute's

prohibitions.

44.     The sale of Non-Drowsy DayQuil Products is the sale of goods to consumers. Hundreds of thousands (or potentially millions) of consumers purchase Non-Drowsy DayQuil Products.

45.     As alleged in detail above, Defendant's misrepresentations were misleading to Plaintiff and to reasonable consumers.

46.     For Mass. Gen Laws Ann. Ch. 93A, Plaintiff mailed a notice and demand letter to Defendant's headquarters on December 23, 2021.  Upon the expiration of any governing statutory notice period, Plaintiff and the class seek all available injunctive or monetary relief.

47.     Plaintiff and class members were injured as a direct and proximate result of Defendant's conduct, and this conduct was a substantial factor in causing them harm, because (a) they would not have purchased Non-Drowsy DayQuil Products if they had known that they cause drowsiness, or (b) they overpaid for the products because they are sold at a price premium due to Defendant's misrepresentations.

### Count II: Violation of New York Gen. Bus. Law § 349
**(on behalf of Plaintiff and the New York Subclass)**

48.     Plaintiff incorporates each and every factual allegation set forth above.

49.     Plaintiff brings this cause of action individually and for the New York Subclass, seeking statutory damages available under New York Gen. Bus. Law § 349 (among other relief).

50.     Plaintiff and the Subclass purchased Non-Drowsy DayQuil Products in New York.

51.     Defendant's false and misleading "Non-Drowsy" claims are consumer-oriented. Defendant's misrepresentations have a broad impact on consumers at large, i.e., the hundreds of thousands (or potentially millions) of New Yorkers that purchase Non-Drowsy DayQuil Products. These transactions recur every day.

13

52.     Defendant's "Non-Drowsy" misrepresentations were material.  As alleged in detail above, these "Non-Drowsy" misrepresentations were important to consumers and affected their choice to purchase Non-Drowsy DayQuil Products.  And, as alleged in detail above, these misrepresentations were likely to mislead reasonable consumers.

53.     Defendant's misrepresentations were willful and knowing.  Because Defendant makes and sells the Non-Drowsy DayQuil Products, Defendant researched the known and common side effects of DXM.  This is diligence that a large company like Procter & Gamble would do when selling a drug.  As a result, Defendant knows that DXM causes drowsiness. Furthermore, Defendant controls its labeling, knowingly puts on the "Non-Drowsy" representations, and knows the plain meaning of "Non-Drowsy."  Finally, it is standard practice in the industry to test labeling with consumers, and Defendant's testing would confirm that "Non-Drowsy" is misleading.

54.     Plaintiff and Subclass members were injured as a direct and proximate result of Defendant's conduct, and this conduct was a substantial factor in causing them harm, because they did not get what they paid for (cough syrup that was truthfully "Non-Drowsy") and they overpaid for the products because they are sold at a price premium due to Defendant's misrepresentations.

55.     Plaintiff and the Subclass seek statutory damages of $50, treble damages, an injunction, reasonable attorney fees, and all other available relief.  See N.Y.Gen.Bus.Law § 349 (h).

### Count III: Violation of New York Gen. Bus. Law § 350
**(on behalf of Plaintiff and the New York Subclass)**

56.     Plaintiff incorporates each and every factual allegation set forth above.

14

57.     Plaintiff brings this cause of action individually and for the New York Subclass,

seeking statutory damages available under New York Gen. Bus. Law § 350 (among other relief).

58.     Plaintiff and the Subclass purchased Non-Drowsy DayQuil Products in New York.

59.     Defendant's false and misleading "Non-Drowsy" claims impacted consumers at

large.  Defendant's misrepresentations have a broad impact on consumers at large, i.e., the

hundreds of thousands (or potentially millions) of New Yorkers that purchase Non-Drowsy

DayQuil Products.  These transactions recur every day.

60.     Defendant's "Non-Drowsy" claims were deceptive and misleading in a material

way.  As alleged in detail above, these "Non-Drowsy" misrepresentations were important to

consumers and affected their choice to purchase Non-Drowsy DayQuil Products.  And these

misrepresentations were likely to mislead reasonable consumers.

61.     Plaintiff and the Subclass saw and relied on Defendant's "Non-Drowsy"

misrepresentations.

62.     Defendant's misrepresentations were willful and knowing.  Because Defendant

makes and sells the Non-Drowsy DayQuil Products, Defendant researched the known and

common side effects of DXM.  This is diligence that a large company like Procter & Gamble

would do when selling a drug.  As a result, Defendant knew that DXM causes drowsiness.

Furthermore, Defendant controls DayQuil's labeling, knowingly puts on the "Non-Drowsy"

representations, and knows the plain meaning of "Non-Drowsy."  Finally, it is standard practice in

the industry to test labeling with consumers, and Defendant's testing would confirm that "Non-

Drowsy" is misleading.

63.     Plaintiff and Subclass members were injured as a direct and proximate result of

Defendant's conduct, and this conduct was a substantial factor in causing them harm, because

they did not get what they paid for (cough syrup that was truthfully "Non-Drowsy") and they

overpaid for the products because the products are sold at a price premium due to Defendant's

misrepresentations.

64.     Plaintiff and the Subclass seek statutory damages of $500, treble damages, an

injunction, reasonable attorney fees, and all other available relief.  See N.Y.Gen.Bus.Law § 350-e

(3).

<u>**Count IV: Breach of Express Warranty**</u>
**(on behalf of Plaintiff and a Nationwide Class)**

65.     Plaintiff incorporates by reference each and every factual allegation set forth

above.

66.     Plaintiff brings this count individually and for the Nationwide Class.

67.     Defendant, as the designer, manufacturer, marketer, distributor, supplier, and/or

seller of the Non-Drowsy DayQuil Products, issued material, written warranties by representing

that the products were "Non-Drowsy."  This was an affirmation of fact about the products (i.e., a

description of the effects of the ingredients) and a promise relating to the goods.

68.     This warranty was part of the basis of the bargain and Plaintiff and members of the

Nationwide Class relied on this warranty.

69.     In fact, the Non-Drowsy DayQuil Products do not conform to the above-referenced

representation because, as alleged in detail above, they cause drowsiness.  Thus, the warranty was

breached.

70.     Plaintiff provided Defendant with notice of this breach of warranty, by mailing a

notice letter to Defendant's headquarters, on December 23, 2021.

71.     Plaintiff and the Nationwide Class were injured as a direct and proximate result of

Defendant's breach, and this breach was a substantial factor in causing harm, because (a) they

would not have purchased Non-Drowsy DayQuil Products if they had known that the products

cause drowsiness, or (b) they overpaid for the products because they are sold at a price premium

due to the warranty.

### Count IV: Breach of the Magnuson-Moss Warranty Act
### (on behalf of Plaintiff and the Nationwide Class)

72.     Plaintiff incorporates by reference each and every factual allegation set forth

above.

73.     Plaintiff brings this count individually and for the Nationwide Class.

74.     Defendant supplied Non-Drowsy DayQuil Products to consumers and Non-

Drowsy DayQuil Products are consumer products.

75.     Defendant issued material, written warranties by representing that the products

were "Non-Drowsy."  This was an affirmation of fact about the material in the products (i.e., a

description of the effects of the ingredients) and a promise relating to the goods.

76.     Defendant represented that the material inside the Non-Drowsy DayQuil Products

(the ingredients) would meet a specified level of performance over a specified period of time.

Defendant represented that, when taken at the recommended dosage, the product ingredients

would not cause drowsiness and drowsiness is not a side-effect.

77.     This warranty was part of the basis of the bargain and Plaintiff and members of the

Nationwide Class relied on this warranty.

78.     In fact, the Non-Drowsy DayQuil Products do not conform to the above-referenced

representation because, as alleged in detail above, they cause drowsiness.  Thus, the warranty was

breached.

79.     Plaintiff provided Defendant with notice of this breach of warranty (including Plaintiff's intent to seek classwide relief), by mailing a notice letter to Defendant's headquarters, on December 23, 2021.

80.     Plaintiff and the Nationwide Class were injured as a direct and proximate result of Defendant's breach, and this breach was a substantial factor in causing harm, because (a) they would not have purchased Non-Drowsy DayQuil Products if they had known that the products cause drowsiness, or (b) they overpaid for the products because they are sold at a price premium due to the warranty.

## VI.   Jury Demand.

81.     Plaintiff demands a jury trial on all issues so triable.

## VII.  Prayer for Relief.

82.     Plaintiff seeks the following relief individually and for the proposed class and subclasses:

- An order certifying the asserted claims, or issues raised, as a class action;

- A judgment in favor of Plaintiff and the proposed class;

- Damages, statutory damages (including under N.Y.Gen.Bus.Law § 349 (h) and § 350-e (3)), treble damages, and punitive damages where applicable;

- Restitution;

- Disgorgement, and other just equitable relief;

- Pre- and post-judgment interest;

- An injunction prohibiting Defendant's deceptive conduct, as allowed by law;

- Reasonable attorneys' fees and costs, as allowed by law;

- Any additional relief that the Court deems reasonable and just.

18

Date: December 29, 2021

Respectfully submitted,

By:     /s/ *Jonas Jacobson*
        Jonas Jacobson

        DOVEL & LUNER, LLP
        Jonas Jacobson (*pro hac vice* forthcoming)
        Simon Franzini (*pro hac vice* forthcoming)
        201 Santa Monica Blvd., Suite 600
        Santa Monica, CA 90401
        (310) 656-7066
        jonas@dovel.com
        simon@dovel.com

        Counsel for Plaintiff